IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

SHABUDIN SUNESARA and SAMKA ENTERPRISES,
        Plaintiffs,

-vs-

U.S. CITIZENSHIP AND IMMIGRATION SERVICES; THE DEPARTMENT OF HOMELAND SECURITY; ANGELA K. BARROWS, as Acting Director of the Texas Service Center, of the U.S. Citizenship and Immigration Services; ALEJANDRO MAYORKAS, as Director of the U.S. Citizenship and Immigration Services; and JANET NAPOLITANO, as the Secretary of Homeland Security,
        Defendants.

Case No. A-11-CA-049-SS

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiffs Samka Enterprises and Shabudin Sunesara's Motion for Remand [#29], Defendants Department of Homeland Security, et al.'s Cross Motion for Summary Judgment [#28], and Reply in Support [#32], and Plaintiffs' Response [#33]. Having considered these documents, the case file as a whole, and the relevant law, the court enters the following opinion and orders, DENYING the motion to remand, and GRANTING summary judgment in favor of the Defendants.

### Background

This is an administrative appeal under the Administrative Procedures Act (APA). *See* 5 U.S.C. §§ 701–06. Petitioners appeal denial of an I-140 Immigrant Petition for an Alien Worker,

filed in June 2007 by Samka Enterprises on behalf of Shabudin Sunesara, in an effort to obtain permanent resident status for Sunesara. Sunesara is a citizen and native of India, and Samka Enterprises apparently seeks permanent residence for him so he can manage a convenience store in Houston which is owned and operated by Samka. Sunesara claims he is entitled to an employment visa under 8 U.S.C. § 1153(b)(3), which applies to "Skilled workers, professionals, and other workers." Defendant U.S. Citizenship and Immigration Services (USCIS)[1] received his I-140 in June 2007, requested additional evidence in December 2007, and, apparently unsatisfied with the evidence provided by Samka (a CPA's opinion letter, Samka's 2005 federal tax return, and a guarantee of Sunesara's salary by Samka's sole shareholder), subsequently denied his I-140 petition in February 2008. Samka appealed to the USCIS Administrative Appeals Office (AAO) in March 2008. The appeal apparently included additional evidence. Two years later, in March 2010, the AAO upheld the denial, and dismissed Sunesara's appeal. Some ten months later, Sunesara filed this lawsuit, petitioning for review of the agency determination. Pet'rs' Orig. Compl. [#1] at 5–6.

In a lengthy and well-reasoned decision, the AAO found two independent grounds mandated denial of Sunesara's petition. First, it found Samka had failed to demonstrate its "ability to pay the proffered wage as of the priority date and continuing until the beneficiary obtains lawful permanent residence." Pet'rs' Mot. for Remand [#29-1], App. at 2 [hereinafter AAO Dec.]. The "priority date" is the date on which an ETA Form 9089 is accepted for processing by a Department of Labor employment system office. See 8 C.F.R. § 204.5(d). In this case, that date was August 18, 2005. AAO Dec. [#29-1] at 2. In addition, the AAO found the petition failed to establish Sunesara's credentials for the managerial position; the job description in the underlying ETA Form 9089

---

[1] The USCIS is a subordinate agency within the Department of Homeland Security.

specified at least twenty-four months management experience, including experience preparing employees' work schedules and payroll. *Id.* at 10. However, Sunesara's I-140 and supporting evidence, though reciting other management experience, did not represent he had experience handling employees' work schedules and payroll. *Id.*

Sunesara argues denial of his I-140 petition was unsupported by the requisite substantial evidence, the AAO failed to "consider all relevant evidence" presented in support of the I-140, *id.* at 7, and that this constitutes a "legal wrong" for which judicial review is provided under 5 U.S.C. § 702. Sunesara claims the Attorney General was required to approve his petition under 8 U.S.C. § 1154(b), and also that he has been deprived of due process under the Fifth Amendment, by the Government's alleged failure to consider all relevant evidence, as apparently required by regulation, *see* 8 C.F.R. § 204.5(l)(3). Sunesara accordingly sought a de novo review in this Court, and a writ of mandamus requiring approval of his I-140 petition. Pet'rs' Orig. Compl. [#1] at 9. Presently, Sunesara has alternatively requested a remand to the agency, with instructions to review the relevant evidence. Pet'rs' Mot. for Remand [#29] at 1.

The Government has moved for summary judgment, because Sunesara has not shown that the AAO and USCIS rulings were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," and because Samka failed to meet its burden of proof before the agency.

## Analysis

I.  **Legal Standards**

Under the APA, this Court is authorized to:

[H]old unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2)(A)–(F).

### A.    APA Scope of Review

When judicial review is sought under 5 U.S.C. § 706, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam). The APA directs that a "court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error," 5 U.S.C. § 706, and the reviewing court is normally limited to the record before the agency at the time of the determination, *James Madison Ltd. by Hecht v. Ludwin*, 82 F.3d 1085, 1095 (D.C. Cir. 1996). That record includes all documents and materials which the agency "directly or indirectly considered." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993). In APA cases, "[e]vidence cannot be submitted in the reviewing court and the parties are bound by the evidence in the administrative record." *Redmond v. United States*, 507 F.2d 1007, 1111 (5th Cir. 1975).

### B.    Standard of Review—APA Summary Judgment

"The normal review of administrative determinations under the Administrative Procedures Act requires the application of the substantial evidence test." *Id.* "Under the substantial evidence test, a reviewing court is bound by the findings of the administrative agency if those findings are

supported by substantial evidence on the administrative record as a whole." *Id.* The review provision of the APA which is relevant here is § 706(2)(A), under which a visa decision is only reversed "if the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1474, 1475 (5th Cir. 1989). "The agency's decision does not have to be ideal so long as the agency gave at least minimal consideration to relevant facts contained in the record." *Wright v. United States*, 164 F.3d 267, 268–69 (5th Cir. 1999) (per curiam). Thus, so long as a rational basis for the agency's decision exists, it is not considered an abuse of discretion. *Id.*

This deferential standard applies with particular force when reviewing immigration rulings. The Supreme Court has explained that "judicial deference to the Executive Branch is especially appropriate in the immigration context." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999).

Finally, any findings of fact made by the agency will be upheld upon review if supported by substantial evidence. 5 U.S.C. § 706(2)(E). Conversely however, the reviewing court cannot overturn the agency's findings merely because alternative findings would likewise be supported by substantial evidence in the record. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992).

### C. Petitions for Employment-Based Immigrants

The AAO found two independent grounds for dismissing Sunesara's appeal—failure to demonstrate Samka could pay the proffered wage specified for him, and failure to demonstrate Sunesara was qualified for the position. The determinations by the AAO and USCIS were governed by various Department of Homeland Security Immigration Regulations. As relevant here, the wage requirement is subject to the following regulation:

> Ability of prospective employer to pay wage. Any petition filed by or for an

employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage. The petitioner must demonstrate this ability at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence. *Evidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements.* . . . In appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner or requested by the Service.

8 C.F.R. § 204.5(g)(2)(ii) (emphasis added).

Likewise, the job qualification requirements are:

Offer of employment. No labor certification is required for this classification; however, the prospective employer in the United States must furnish a job offer in the form of a statement which indicates that the alien is to be employed in the United States in a managerial or executive capacity. Such letter must clearly describe the duties to be performed by the alien.

*Id.* § 204.5(j)(5). And:

(A) General. Any requirements of training or experience for skilled workers, professionals, or other workers must be supported by letters from trainers or employers giving the name, address, and title of the trainer or employer, and a description of the training received or the experience of the alien.

(B) Skilled workers. If the petition is for a skilled worker, the petition must be accompanied by evidence that the alien meets the educational, training or experience, and any other requirements of the individual labor certification, meets the requirements for Schedule A designation, or meets the requirements for the Labor Market Information Pilot Program occupation designation. The minimum requirements for this classification are at least two years of training or experience.

*Id.* § 204.5(1)(3).

## II.  Application

### A.  Ability to Pay Proffered Wage—The AAO's Decision

Applying 8 C.F.R. § 204.5(g)(2)(ii), the AAO found Samka had failed to meet its evidentiary burden of establishing its ability to pay Sunesara the proffered wage beginning on the priority date

of August 18, 2005, as established by acceptance of the ETA Form 9089. Samka specified in the ETA Form 8089 that the proffered wage for the managerial position would be $29,723. AAO Dec. [#29-1] at 2. The AAO methodically considered, and rejected, various avenues to establish Samka's ability to pay the proffered wage. First, the AAO noted that Samka had not actually employed and paid Sunesara during the requisite period, which would have been "considered *prima facie* proof" of ability to pay the wage. *Id.* at 3.

Next, the AAO considered whether "the next income figure reflected on the petitioner's federal income tax return, without consideration of depreciation or other expenses" would cover the proffered wage. *Id.* In doing so, the AAO noted, and this Court agrees, that "[r]eliance on federal income tax returns as a basis for determining a petitioner's ability to pay the proffered wage is well established by judicial precedent." *Id.* (citing *Elatos Rest. Corp. v. Sava*, 632 F. Supp. 1049, 1054 (S.D.N.Y. 1986)); *see* 8 C.F.R. § 204.5(g)(2)(ii) ("Evidence of this ability shall be either in the form of . . . federal tax returns . . . .").

Samka presented its 2005, 2006, and 2007 tax returns as evidence of its ability to pay the proffered wage.[2] These showed Samka's stated net income to be $20,473, $27,571, and $34,830, respectively. AAO Dec. [#29-1] at 5. The AAO accordingly concluded, and this Court likewise agrees, that although Samka had sufficient income in 2007, its income was insufficient in 2005 and 2006. As such, the AAO was correct in dismissing Sunesara's appeal, because employment visa petitioners bear the burden of demonstrating the ability to pay the proffered wage beginning on the priority date. *See In re Wing's Tea House* 16 I.&N. Dec. 158, 160 (Act. Reg. Comm. 1977)

---

[2]Only the 2005 and 2006 returns were considered by the USCIS in its original determination. AAO Dec. [#29-1] at 4.


(petitioner must establish visa requirements as of the priority date). To hold otherwise would reward speculative petitions, filed before the employer can actually pay the proffered wage, in hopes the employer's income will suffice to cover the stated sum at a future date. Moreover, since it is the petitioner's own filing of the ETA Form 9089 that sets the priority date, there is no inequity in holding a petitioner to that date.

Here, that priority date was August 18, 2005. Samka's 2005 and 2006 returns indicate income insufficient to cover the wage in question for a considerable period after that date. As such, the AAO's determination was certainly not arbitrary or capricious—rather, it was firmly situated within the regulatory guidelines. It was also supported by substantial evidence—the tax returns themselves.

However, the AAO went on to carefully consider any alternative basis on which Samka's ability to pay Sunesara might be established. Specifically, the AAO noted that a petitioner's net current assets are an alternative form of proof. AAO Dec. [#29-1] at 5. However, Samka failed to meet its burden under this measure as well: Samka's net current assets, as reflected on its 2005 and 2006 returns, amounted to $9,824 and $9,806, respectively—nowhere near the proffered wage. *Id.* As the net assets covered barely one-third of the proffered wage, the AAO was correct in its finding.

The AAO went on to consider, and reject, various unsound arguments made by Sunesara in favor of alternative measures and proof of Samka's ability to pay the wage. The Court agrees with all of these conclusions, and briefly notes the following:

First, the AAO rejected Sunesara's argument that Samka's depreciation figures for tangible, long-term assets should be added to the net income figures derived from its tax returns. This conclusion was well within the agency's discretion. *See River Street Donuts, LLC v. Napolitano,*

558 F.3d 111, 118 (1st Cir. 2009). Apparently, the calculation Sunesara argues for was the practice of the AAO before 2003, but since then the AAO's consistent practice has been, as in this case, to ignore depreciation figures. *See id.* The First Circuit has held that because this change in policy was supported by a rational reason, and has been consistently applied, there was no basis to second-guess the agency practice. *Id.* ("We find that the AAO has a rational explanation for its policy of not adding depreciation back to net income. Namely, that the amount spent on a long term tangible asset is a 'real' expense."). The Court accordingly finds the AAO finding in this case was not arbitrary or capricious.

Second, the AAO likewise rejected Samka's argument that its net income and net assets should be added together in determining Samka's ability to pay the proffered wage. The AAO noted that net income and net assets are two different measure of the same thing—the funds available to an entity—and therefore they cannot be added together. As the AAO explained, the qualitative difference in the two methodologies is that the first is retrospective, while the latter is prospective. The Court finds this conclusion was not arbitrary or capricious, as it is supported by a fundamental principle of valuation—net income and net assets are two entirely separate economic measures. *See Dunn v. C.I.R.*, 301 F.3d 339, 350 (5th Cir. 2002) ("As a broad generality, appraising corporations or blocks of corporate stock involves consideration of three approaches: income, market, and assets-based.") (citing SHANNON P. PRATT ET AL., VALUING A BUSINESS: THE ANALYSIS AND APPRAISAL OF CLOSELY HELD COMPANIES 45 (4th ed. 2000)).

Finally, although the totality of the circumstances will be considered if warranted by the evidence, and the USCIS can thus look beyond a mathematical comparison of income to proffered payment, *see In re Sonegawa*, 12 I.&N. Dec. 612, 615 (Reg. Comm. 1967) (noting that an

insufficient net income "does not in itself preclude" a finding of ability to pay), Sunesara cites no authority *requiring* the AAO, or this Court, to make such an inquiry. In fact, the AAO *did* consider the wider circumstances, in particular, as suggested by *In re Sonegawa*, the AAO looked at whether Samka's business had expectations of a continued increase, and reasonably concluded, based on relatively flat rates of growth, low compensation for a small number of employees (three), lack of officer compensation, and failure to provide proof of any other relavent factors, that there was no such expectation. *See* AAO Dec. [#29-1] at 8–9. This Court agrees there is no evidence that Samka, which runs an apparently ordinary convenience store, is on the verge of potential growth sufficient to cover the proffered wage.

### B. Additional Issues On Appeal

Sunesara asserts three additional issues in this appeal. First, that the AAO disregarded evidence that the managerial position was not new, and income from an existing employee would be redirected to pay Sunesara. Second, the AAO wrongly disregarded an opinion letter from a certified public accountant. And third, the AAO erred by disregarding a letter from Samka's sole owner, guaranteeing the proffered wage. The Court addresses each in turn.

#### 1. New Position and Existing Wages

Sunesara argues at length that the AAO should have taken into account the fact that the managerial position Samka offered for was not new, and that a present employee would leave, freeing up his wages to satisfy the proffered wage, once Sunesara becomes available to work. This argument fails because it simply was not presented to the AAO. The sole basis for it in the agency record was a minute checkbox in the I-140 form, indicating the position was not new. However, Samka failed to present evidence to the AAO of what pre-existing wages, if any, would be redirected

to Sunesara. Samka likewise failed to apprise the USCIS or AAO of this argument, other than making a single checkmark. As such, the AAO's failure to consider this argument was not arbitrary or capricious, but entirely reasonable and understandable. Furthermore, Sunesara cannot expect the USCIS or AAO to divine this argument from the various, general evidence it did supply, such as the fact the petition included a description of the managerial duties and the prospective pay. *See* Pet'rs' Mot. for Remand [#29] at 11–12. Samka offers a sworn letter from its president, Karim Ali, supporting this argument. *Id.* [#29-1], App. at 76–78. However, this affidavit is dated November 11, 2011, and hence was not part of the agency record.[3] Therefore, the Court cannot consider it. *See Redmond*, 507 F.2d at 1111.

2. **CPA Opinion Letter**

Sunesara argues the AAO should have considered a letter from a certified public accountant, opining that Samka could pay the proffered salary. However, this letter was not an audited financial statement. Such an unaudited statement is not included within the types of evidence the AAO is authorized to review in assessing the ability to pay the proffered wage. *See* 8 C.F.R. § 204.5(g)(2)(ii) ("Evidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements. . . . In appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner or requested by the Service."). Most importantly, the regulation specifies *audited* financial statements. It also lists certain "additional evidence": "profit/loss statements, bank account records, or personnel

---

[3] Indeed, the AAO had before it two other letters from Mr. Ali, in which he promised to guarantee the proffered wage, but made no mention of the departing employee or his salary. *See* Pet'rs' Mot. for Remand [#29-1], App. at 39, 64 (letters of December 26, 2007, and February 22, 2008).

files," none of which describe an unaudited financial statement. *See id.*

Moreover, and distinguishing this case from the authority relied on by Sunesara, the AAO explained why, in any event, the CPA's opinion was unreliable: it advocated for inclusion of depreciation deductions, as discussed above. *Cf. Rahman v. Chertoff*, 641 F. Supp. 2d 349, 353 (D. Del. 2009) ("[I]f the AAO were to disregard [the CPA's] analysis as unaudited documentation, it must give specific reasons for doing so.").

Therefore, the AAO was not arbitrary or capricious in dismissing the CPA's letter.

### 3. Personal Guarantees of Samka's President

Samka's president twice promised to guarantee the proffered wage. *See* Pet'rs' Mot. for Remand [#29-1], App. at 39, 64 (letters of December 26, 2007, and February 22, 2008). However, the AAO noted it could not pierce the corporate veil and look beyond to Samka's owner. Sunesara cites no authority for why this Court should do so, either. Given that it is Samka, not Mr. Ali, who petitioned on Sunesara's behalf, the AAO was right to look at Samka's financial ability, not Mr. Ali's.[4]

### B. Qualification for the Prospective Position

The AAO's second reason for dismissing Sunesara's appeal was that he failed to meet his burden of establishing his qualifications for the managerial position, as required by 8 C.F.R.

---

[4] The AAO also noted the lack of any financial statement from Mr. Ali demonstrating his own ability to pay the proffered wage. Sunesara argues that Mr. Ali's 2006 federal tax return was somehow not transmitted by the USCIS to the AAO, and that it showed some $28,767 in income from Samka. Pet'rs' Mot. for Remand [#29] at 17. However, because Sunesara has cited no authority supporting the relevance of Mr. Ali's financial condition, the Court need not determine whether Mr. Ali's return was or should have been part of the agency record. The Court does wonder how Mr. Ali could derive such an income from a year in which Samka apparently reported no officer salaries, but need not answer that question either.

§ 204.5(j)(5) and 8 C.F.R. § 204.5(1)(3). The AAO noted the ETA Form 9089 listed, *inter alia*, requirements that the manager "[p]repare employees work schedules. Prepare payroll and sales tax." AAO Dec. [#29-1] at 9. The AAO considered the evidence before it, including (1) Sunesara's own declarations on ETA Form 9089, and (2) a letter written on his behalf by the president of another employer, listing Sunesara's duties as manager of the Rosenberg Food Mart. The AAO, noting that neither contained any indication Sunesara had the requisite two-years experience preparing employees' work schedules or preparing payroll for employees, concluded that Sunesara had not demonstrated his credentials. *Id.* at 10. The letter also did not specify whether the prior experience was full-time or part-time, further failing to establish Sunesara's credentials, and making the AAO's conclusion reasonable. *See id.*

Sunesara has submitted an additional letter from the president of the Rosenberg Food Mart, representing that Sunesara did in fact carry out such duties.[5] However, that letter was not part of the agency record, and as such cannot be considered here. *See Redmond*, 507 F.2d at 1111.

Sunesara also argues the AAO should not have considered this ground, because it was not considered by the USCIS in the initial determination. This argument fails because, even if correct, the AAO correctly and reasonably found Samka did not demonstrate its ability to pay the proffered wage, as described above, which was an independent and sufficient reason to dismiss his appeal. *See Spencer Enters., Inc. v. United States*, 229 F. Supp. 2d 1025, 1037 (E.D. Cal. 2001), *aff'd* 345

---

[5]The AAO also questioned the veracity of the first letter, noting the letterhead misspelled Rosenberg, Texas as Rosenburg. AAO Dec. [#29-1] at 10. Sunesara contends on appeal, not unreasonably, that the misspelling was an innocent mistake by one for whom English is a second language. However, there is no indication this was the sole ground for the AAO's finding that Sunesara had failed to carry his burden of showing his qualifications—rather, the AAO mentioned it in passing, *after* considering that the contents of the letter did not support all the job requirments—and therefore the Court need not further address it further.

F.3d 683. Furthermore, the regulation Sunesara relies upon for this contention, 8 C.F.R. § 205.2, applies to revocations of Form I-140 petitions, not to their denials, as occurred here. *See* 8 C.F.R. 205.2.

**C.     Due Process**

Sunesara finally contends the AAO's decision deprived him of due process. To the contrary, Sunesara has had all the process he is due, and his claim fails for three reasons. First, the record indicates that at both the initial determination, and on appeal, Samka's petition on behalf of Sunesara was given adequate process by the agency. When it detected deficiencies in the petition regarding Samka's ability to pay the proffered wage, the USCIS requested additional evidence from Samka, and it duly considered that evidence before denying the petition. Pet'rs' Mot. for Remand [#29-1], App. at 71 (USCIS letter of Dec. 17, 2007). The AAO in turn considered not only the evidence which was before the USCIS, but also considered additional evidence Sunesara and Samka submitted subsequently, and conducted a de novo review. AAO Dec. [#29-1] at 3 & n.1. Both opinions give every indication that the officials reasonably applied the relevant regulations to the facts at hand, in a manner apparently consistent with agency practice.

Second, Sunesara was only entitled to a consideration of the petition, he was not entitled to have it granted. As another district court has noted: "Since the granting of the petition and the issuance of a visa are within the discretion and authority of the Service, due process is served so long as discretion is exercised, as it was in this case, after a fair investigation, with notice and an opportunity to be heard." *K.C.P. Food Co. v. Sava*, 623 F. Supp. 1080, 1085 (D.C. N.Y. 1985). Here, Sunesara had notice and an opportunity to be heard, the investigation, as memorialized in the

decisions of the USCIS and AAO, appears to have been fair, and the requisite discretion was duly exercised. Sunesara may disagree with the outcome, but he received his due process.[6]

Finally, the content of Sunesara's due process complaint lacks merit. He argues the agency "failed to consider all of the relevant evidence" presented to support his petition. However, Sunesara points to no evidence which was presented to, but then ignored by, the agency—rather, the evidence he would have the agency consider on remand was either (1) considered, and rejected, by the agency (such as the CPA letter), or (2) never presented to the agency, such as the November 11, 2011 affidavit letter from Mr. Ali. The closest he comes to presenting evidence which was ignored was Mr. Ali's 2006 federal tax return, which allegedly got lost in transmission from the USCIS to the AAO. However, as explained above, that evidence was irrelevant.

## Conclusion

For the foregoing reasons, the Court finds the AAO's dismissal of Sunesara's appeal was both supported by substantial evidence, and was not arbitrary or capricious, but rather was entirely reasonable and justified by the record before that body.

Accordingly,

IT IS ORDERED that Petitioners' Motion for Remand is DENIED;

---

[6]Indeed, Sunesara has presumably benefitted from the several years it has taken for this case to wend its way through its appeals before both the AAO and this Court, and this Court was frankly dismayed by his present motion to remand the case back to the AAO for further proceedings.

IT IS FINALLY ORDERED that Respondents' Motion for Summary Judgment is GRANTED.

SIGNED this the 7th day of February 2012.

*[signature: Sam Sparks]*

SAM SPARKS
UNITED STATES DISTRICT JUDGE